UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOURK
------------------------------------------------------------------------x
A. ELEPHANT CORP.,                                          :
                                                            :
    Plaintiff,                                             :
                                                            :
                                                            :     08cv9969 (HB)
                  -against-                          :     **OPINION & ORDER**
                                                            :
HIFOCUS GROUP LIMITED, WIRANA PTE. LTD,                     :
AND WIRANA WORLDWIDE                                        :
                                                            :
                 Defendants.                         :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

On November 20, 2008 this Court granted Plaintiff A. Elephant Corp.'s ("AEC") application for an *ex parte* Order of Maritime Attachment and Garnishment (the "Order of Attachment") pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Fed. R. Civ. P. (the "Supplemental Rules").  Defendant HiFocus Group Limited ("HiFocus") now moves pursuant to Rule E of the Supplemental Rules for vacatur of the Order of Attachment and, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), for dismissal of the Verified Complaint.  For the foregoing reasons, HiFocus' motion is GRANTED.

## I.  FACTUAL BACKGROUND

This case concerns an alleged breach of a Memorandum of Agreement dated August 19, 2008 (the "MOA") for the purchase and sale of the ocean-going vessel the M/T A Elephant (the "Vessel"), registered under the flag of Liberia. (Verified Compl. filed November 18, 2008 ("Compl.") at ¶5, Ex. 2 at ¶ 1.)  Pursuant to the terms of the MOA, HiFocus agreed to buy the Vessel from AEC for the sum of $24,231,375.00.[1]  (Compl. at ¶¶ 5-8.)  Under the terms of the MOA, the sale of the Vessel included "all her outfit, equipment, anchors and chains . . . provisions, bunkers, and lubrication oil" and the Vessel was to be delivered in Chittagong, Bangladesh "under her own power, safely afloat, substantially intact" and with her "Main Engine and Generators under working condition." (Compl. at Ex. 2 ¶¶ 1, 3.)  Pursuant to the MOA, the Vessel was to be "sold for demolition only," and AEC, as seller, was obligated to "assist the

---

[1] The Verified Complaint filed by AEC alleges that Defendants Wirana Worldwide and Wirana Pte. Ltd. are alter egos of HiFocus.  (Compl. ¶ 30.)

1

Buyers in beaching the vessel at Buyers' designated breaking up plot in Chittagong."  (*Id.* at ¶¶ 3, 11.)

AEC alleges that HiFocus breached the MOA by failing to make payment of a deposit of 20% of the purchase price, or $4,846,275, on or before August 21, 2008.  (*Id.* at ¶ 9.)  Pursuant to Clause 4 of the MOA, upon HiFocus' breach AEC was "at liberty (but not bound) to resell the vessel" and recover losses from HiFocus.  AEC sold the Vessel on September 3, 2008, for $22,172,500.00, or $2,058,875 less than the purchase price under the MOA.

On November 20, 2008, AEC applied to this Court for and was granted an *ex parte* Order of Attachment in the amount of $2,787,390.67, the amount of AEC's alleged losses plus estimated interest and attorneys' fees.  HiFocus moved to vacate the Order of Attachment and dismiss this action on January 15, 2009.

## II.  LEGAL STANDARD

"The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution. U.S. Const. art. III, § 2."  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006). Supplemental Rules B and E govern attachment of assets in maritime actions.  Pursuant to Rule B, a plaintiff who files a verified complaint and an affidavit which states the defendant cannot be found in the district is entitled to an attachment of a defendant's assets up to the amount in dispute. Fed. R. Civ. P. Supp. R. B(1).  Rule E entitles a defendant whose assets have been attached to a "prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated."  Fed. R. Civ. P. Supp. R. E(4)(f).

Faced with a motion for vacatur under Rule E(4)(f), the plaintiff bears the burden to establish compliance with the filing and service requirements of Rules B and E and that "1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli* 460 F.3d at 445.  If the plaintiff cannot establish that it has a valid prima facie admiralty claim against the defendant, the attachment must be vacated and the action dismissed for lack of subject matter jurisdiction. *See Primera Maritime (Hellas) Ltd. v. Jiangsu Eastern Heavy Industry Co. Ltd.*, No. 08 Civ. 11299 (JGK), 2009 WL 249249, *2 (S.D.N.Y. Feb. 2, 2009).

### III.  DISCUSSSION

Both HiFocus' entitlement to vacatur of the Order of Attachment as well as this Court's subject matter jurisdiction turn on whether this dispute lies within the Court's admiralty jurisdiction.  "For almost a century, it has been considered 'elementary hornbook law' that a contract for the sale of a vessel does not come within the federal courts' admiralty jurisdiction." *Smith v. Mitlof*, 198 F.Supp.2d 492, 499 (S.D.N.Y. 2002) (quoting *International Shipping Co., S.A. v. Hydra Offshore, Inc.,* 675 F.Supp. 146, 150 (S.D.N.Y.1987). In the Second Circuit, this rule is often cited with reference to the 1918 case *The Ada,* 250 F. 194, 198 (2d Cir.1918) (Rogers, J., concurring) ("The rule is settled that contracts for … selling a ship, are not maritime contracts and within the jurisdiction of the admiralty.")

Plaintiff contends, however, that the Supreme Court's decision in *Norfolk Southern Ry. Co. v. Kirby,* 543 U.S. 14 (2004) ("*Kirby*") and the Second Circuit's subsequent decision in *Folksamerica Reinsurance Co. v. Clean Water of New York*, 413 F.3d 307 (2d Cir. 2005) have loosened the boundaries of federal admiralty jurisdiction and thereby called into question the rule of *The Ada*.  The Supreme Court has noted that "the trend in modern admiralty case law ... is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime." *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 611 (1991).   In *Kirby*, a "maritime case about a train wreck," the Supreme Court found that bills of lading for transport of cargo from Australia to an inland U.S. city were "maritime contracts because their primary objective [was] to accomplish the transportation of goods by sea." 543 U.S. at 24.  After *Kirby*, the answer to the jurisdictional question "'depends upon ... the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions.'" *Kirby*, 543 U.S. at 23-24 (quoting *North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.,* 249 U.S. 119, 125 (1919)).

The Second Circuit has acknowledged that "there are 'few clean lines between maritime and non-maritime contracts,'" *Folksamericana*, 413 F.3d at 311 (quoting *Kirby*, 543 U.S. at 23), but clarified that the boundaries of admiralty jurisdiction over contracts are "defined by the purpose of the jurisdictional grant—to protect maritime commerce." *Id.* (citing *Exxon*, 500 U.S. at 608).  In *Folksamerica*, the Circuit reiterated that a two-step inquiry is required to determine if a dispute lies within a district court's admiralty jurisdiction.  First, the court must answer the threshold question of whether the "subject matter of the dispute" implicates the "concerns

3

underlying admiralty and maritime jurisdiction." *Folksamerica*, 413 F.3d at 312.  Second, if the dispute implicates such concerns, the district court must ask whether the "primary objective" of the contract in question concerns maritime commerce. *Id.* at 315. (citing *Kirby* 543 U.S. at 25).

In *Kalafrana Shipping Ltd. v. Sea Gull Shipping Co., Ltd.*, 591 F.Supp.2d 505 (S.D.N.Y. 2008) Judge Scheindlin concluded that the "broad language" of *Kirby* and *Folksamerica* "support the demise of the holding in *The Ada*."  In *Kalafrana* the dispute arose from a memorandum of agreement for the sale of an operational vessel and concerned the responsibility for the cost of certain necessary repairs.  *Id.* at 506.  In concluding that the dispute sounded in admiralty, Judge Scheindlin wrote "a contract for the purchase of a launched ship that has been plying the seas for some time . . . has a distinctly 'salty flavor,' for the sole purpose of a ship is to sail."[2]  *Id.* at 509.

Several other judges of this Court, however, have reaffirmed the validity of the rule of *The Ada* in the wake of *Kirby* and *Folksamerica*.  *See Unicorn Bulk Traders Ltd. v. Fortune Maritime Enterprises, Inc.*, No. 08 Civ. 9710 (PGG), 2009 WL 125751 (S.D.N.Y. January 20, 2009) ("There is a controlling Second Circuit decision—*The Ada*—holding that a contract to purchase a vessel at a fixed price is not justiciable in admiralty"); *Great Eastern Shipping Co. Ltd.  v. Maritime Tankers and Shipping Co. Intl. Ltd.*, No. 09 Civ. 502 (PKL) (S.D.N.Y. January 21, 2009) (breach of contract for sale of existing vessel in navigation is not maritime claim); *Primera Maritime (Hellas) Limited v. Jiangsu Eastern Heavy Industry Co. Ltd.,* No. 08 Civ. 11299 (JGK), 2009 WL 249249 (S.D.N.Y. January 30, 2009) (breach of contract for construction and sale of ship not within court's admiralty jurisdiction); *Aggelikos Prostatis Corp. v. Shun Da Shipping Group Ltd.*, No. 08 Civ. 9094 (JGK), 2009 WL 249241 (S.D.N.Y. February 2, 2009) (contract solely for sale of a vessel not within court's admiralty jurisdiction).  Notwithstanding the broad language of *Kirby* and *Folksamerica*, unless and until the Circuit overrules or reverses its earlier precedents, this Court is obliged to follow the well-established and we think reasonable rule that a breach of a contract for the sale of a vessel is not cognizable in admiralty

Moreover, even if *Kirby* and *Folksamerica* are read to implicitly overrule *The Ada*, the principles articulated in those decisions, when juxtaposed with the facts here, do not alter the conclusion that this Court lacks jurisdiction over the instant dispute.  Unlike the vessel at issue in

---

[2] Judge Scheindlin further reasoned that the contract at issue was a "maritime contract" even if the holdings of *Kirby* and *Folksamerica* apply only to cases that involve "mixed contracts" because the contract had two purposes:  sale of the vessel and making any necessary repairs thereto. *Kalafrana*, 591 F.Supp.2d  at 510.

*Kalfrana* which was to continue to ply the seas after consummation of the sale, the MOA at issue here makes clear that the "[t]he vessel is sold for demolition only." (Compl. Ex. 2 at ¶¶ 3, 11.) A contract for the sale of a vessel that is to be beached and demolished does not have maritime commerce as its "primary objective," *Folksamerica*, 413 F.3d at 315, even if the contract required the vessel to be delivered to her "designated breaking up plot in Chittagong" under her own power. Here, the primary objective of the MOA was to retire a vessel from navigation to be dismantled and sold for scrap after she was beached in Chittagong. As a consequence, the contract is clearly more "sandy" than "salty."

The Court is cognizant of the somewhat incongruous results that flow from application of the rule of *The Ada*, including that contracts for the sale or provision of parts, equipment, fuel or other necessaries for a ship will be considered maritime contracts while a contract for the sale of the vessel itself will not. *See, e.g., CTI-Container Leasing Corp. v. Oceanic Operations Corp.* 682 F.2d 377, 381 (2d Cir. 1982) (lease of shipping containers is maritime contract); *Kristensons-Petroleum, Inc. v. Sealock Tanker Co., Ltd.* 304 F.Supp.2d 584, 587 (S.D.N.Y. 2004) ("A contract for supply of marine fuel is "maritime" in nature.") However, this Court is without authority to ignore clear precedents of the Circuit and, in any event, the contract at issue here did not have maritime commerce as its "principal objective." Consequently, AEC has not established a *prima facie* admiralty claim, the Order of Attachment must be vacated and the Verified Complaint must be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, HiFocus' motion is GRANTED. The Order of Attachment is hereby VACATED and this case is dismissed without prejudice  The Clerk of the Court is instructed to close this case and remove it from my docket.

SO ORDERED
New York, New York
March __, 2009

U.S.D.J.

5